# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01014-SCT

*MICHAEL I. SHEFFIELD a/k/a ISSAC SHEFFIELD a/k/a MICHAEL ISSAC SHEFFIELD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/1998 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GARY B. JONES |
| | VELDORE F. YOUNG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | E. J. (BILBO) MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/24/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/15/99 |

## BEFORE SULLIVAN, P.J., SMITH AND COBB, JJ.

## SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. Michael I. Sheffield was convicted in the Circuit Court of Lauderdale County of burglary of a dwelling and sentenced as an habitual offender to a term of life imprisonment. On appeal, he challenges the circuit court's denial of his motions for a directed verdict, judgment notwithstanding the verdict, and a new trial. Finding no reversible error, we affirm.

### STATEMENT OF CASE AND FACTS

¶2. Sheffield was indicted in the Circuit Court of Lauderdale County on November 20, 1997, on a charge of burglary of a dwelling. The "dwelling" was a house owned by Lela Jolly. Jolly resided in a nursing home and had not lived in the house since 1994. The house, located at 1916 34th Avenue in Meridian, Mississippi, had been put up for sale and was listed with a local real estate broker, Robert E. Trotter. With the exception of a few miscellaneous items, the house was not furnished.

¶3. On August 27, 1997, Billy Joe Madison was working in the yard of his grandmother, Mary M. Carpenter. Carpenter lives a few houses down from the Jolly house and testified that she could clearly see the Jolly home from where she lives. On that afternoon, Carpenter and Madison were approached by Sheffield, who asked Madison if he would give him a ride so that he [Sheffield] could go sell some stuff. Originally, Madison agreed to give Sheffield a ride but informed him it would be two hours before he could

finish the yard work and leave. Sheffield also had an iron with him which he offered to sell to both Carpenter and Madison. Neither wanted nor accepted the iron.

¶4. In addition to asking Madison for a ride, Sheffield asked Madison if he could borrow a screwdriver. Madison found this question "peculiar" and informed Sheffield that he might not give him a ride. In response, Sheffield asked to borrow the phone and proceeded to call an antique store. Sheffield then walked back up the road and returned with two space heaters. Carpenter saw Sheffield place the heaters on the back of Madison's truck and brought this to Madison's attention. Madison informed Sheffield that he would not haul anything for him and ordered him to remove the heaters from his truck. Sheffield did so and carried the heaters back up the road, placing them in the yard of a vacant house. Both Carpenter and Madison testified that they then saw him leaving the Jolly house with two more heaters. Sheffield placed those heaters with the other two and returned to the house for the third time. Sheffield next left the Jolly house with a white door under his arm. A white truck pulled up, and they loaded the door onto the truck. The truck then backed up to the vacant lot and loaded the four heaters as well. Neither Carpenter nor Madison called the police at that point because they "didn't want to get involved."

¶5. Later that evening, Trotter arrived at the house to show it to a potential buyer. Trotter entered through the lock box on the front door. Upon entering the house, Trotter noticed that the glass on the back door was broken and that some heaters were missing. When Trotter left the house he made sure the back door, front door and all windows were locked. He did not report the theft to the police.

¶6. The following day, Madison returned to his grandmother's house. While working in the yard, Madison was once again approached by Sheffield. When Sheffield asked Madison for assistance, Madison replied that he was not going to get involved and informed Sheffield that what he was doing was "wrong". Sheffield responded by saying, "...it's no big deal." Sheffield returned to the Jolly house. The police were summoned and, upon arrival, found Sheffield stepping off the back porch of the Jolly house. When asked why he had been in the Jolly house, Sheffield told the officers he had been inside smoking contraband. Detective Donaldson noted a glass window with a torn screen cover. The framing had been "pried off," and Detective Donaldson later concluded this was the place of entry. Trotter was then called to the house to ascertain if any items were missing. The officers determined that the missing items included four space heaters, antique heaters and two doors. None of these items were ever found.

¶7. No fingerprints were taken at the scene. Detective Donaldson testified that the surfaces in the house were not good for trying to lift latent prints. Detective Donaldson further testified that during processing Sheffield made utterances such as "You mean you are going to arrest me for some little bullshit like this? Then I'm going to end up doing big time for something like this, some little petty deal?...If I stole something, where is the evidence?"

¶8. Sheffield did not testify at trial. On April 14, 1998, a jury in the Circuit Court of Lauderdale County convicted Sheffield on a charge of burglary of a dwelling. On May 8, 1998, Sheffield was sentenced as an habitual offender to a term of life imprisonment. Sheffield now appeals to this Court and asserts that the conviction is contrary to the overwhelming weight of the evidence. Specifically, Sheffield asserts that the circuit court erred in failing to grant a directed verdict, a judgment not withstanding the verdict, or a new trial.

## STATEMENT OF THE LAW

# I.

## WHETHER THE COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT OR A JUDGMENT NOT WITHSTANDING THE VERDICT

### A. Standard of Review

¶9. The standard of review for the denial of a judgment notwithstanding the verdict and a directed verdict are the same. *Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998). Therefore, these two issues will be addressed and grouped together. The standard of review is as follows:

> Requests for a directed verdict and motions JNOV implicate the sufficiency of the evidence. The standard of review for the legal sufficiency of the evidence is well-settled:

> [W]e must, with respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Id.* (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)(quoting *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987)(citations omitted))).

### B. Whether the State Failed to Prove the House was a Dwelling

¶10. Sheffield claims that the evidence presented at trial was insufficient to support his burglary conviction. Sheffield first contends that the motion for directed verdict should have been granted because the State failed to prove that Jolly's house was a dwelling within the meaning of Miss. Code Ann. § 97-17-23 ( Supp.1999), which provides in relevant part as follows:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.

At trial, Sheffield made a motion for a directed verdict and challenged the State's proof based specifically upon:

> ...the fact that the State has not proved each and every essential element of the crime as they were supposed to. We have no testimony here that can prove Mr. Sheffield broke into this home. No one saw him go into it, not (sic) heard any testimony, fingerprints or anything that can put him breaking into the home.

Sheffield made no specific challenge to the State's proof that the house was a dwelling. "A motion for a

directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case." ***Banks v. State***, 394 So. 2d 875, 877 (Miss. 1981). "Motions for a directed verdict must be specific and not general in nature." ***Id***. Sheffield failed to address the "dwelling" element in his motion for directed verdict. Sheffield also failed to address the "dwelling" element in his Motion for New Trial and/or JNOV. Therefore, Sheffield is procedurally barred from raising this issue for the first time on appeal. ***Crenshaw v. State***, 520 So.2d 131, 134-35 (Miss.1988).

### C. Whether the State Failed to Prove Sheffield Broke Into the House

¶11. Sheffield argues that there was insufficient evidence to show that he was the person who broke into the Jolly home. Sheffield incorrectly contends that a circumstantial evidence standard of review is the proper in this case and quotes the burden as being "beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." First, Sheffield failed to request circumstantial evidence instructions. Having failed to request them, he cannot now place the trial judge in error on this issue. ***Billiot v. State***, 454 So.2d 445, 462 (Miss. 1984).

¶12. Second, a circumstantial evidence instruction is proper only when the case is consists of wholly circumstantial evidence. ***DePriest v. State***, 377 So.2d 615, 617 (Miss. 1979). "A circumstantial evidence instruction must be given unless there is some type of direct evidence such as eyewitness testimony, dying declaration, or confession or admission of the accused." ***Deal v. State***, 589 So. 2d 1257, 1260 (Miss. 1991). The State's case here is not wholly circumstantial, but instead is based on both direct and circumstantial evidence. "[W]e will not reverse a conviction based upon both direct and circumstantial evidence."***Clark v. State***, 503 So. 2d 277, 278 (Miss. 1987).

¶13. Carpenter testified that she actually saw Sheffield enter the Jolly home. Madison testified that he saw Sheffield enter the Jolly house. "Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking...." ***Alford v. State***, 656 So. 2d 1186, 1190 (Miss. 1995). Furthermore, Madison testified that Sheffield admitted that "as long as don't nobody see nothing or nobody say nothing whose business - who -it's no big deal." Detective Donaldson also testified that Sheffield said, "...you are going to arrest me for some little bullshit like this? Then I'm going to end up doing big time for something like this, some little petty deal?" Sheffield's case was not based entirely upon circumstantial evidence because eyewitness testimony and admissions are considered direct evidence. Consequently, even if Sheffield had properly requested the circumstantial evidence instruction, such an instruction would have been improper under the circumstances of this case.

¶14. Sheffield relies on ***Murphy v. State***, 566 So. 2d 1201 (Miss. 1990), where the defendant had been seen in the area of a sawmill and had in his possession two saws. In that case, the Court held that the State's proof was not enough and established no more than a probability of guilt. The ***Murphy*** case is distinguishable from the present case. Unlike the present case, in ***Murphy*** there was no eyewitness or any other direct evidence that the defendant committed the crime. Additionally, Sheffield relies on ***Shepherd v. State***, 403 So. 2d 1287 (Miss. 1981), where the defendant had been seen *near* a store on the evening it was burglarized. ***Shepherd*** held the evidence justified no more than suspicion. Once again, unlike the present case, there was no eyewitness placing the defendant at the scene of the crime, and therefore no direct evidence. Accordingly, a circumstantial evidence instruction in both ***Murphy*** and ***Shepherd*** was proper.

¶15. "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their conflicting testimony." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). "[When] there is substantial evidence consistent with the verdict, evidence which is of such weight and quality that, keeping the burden of proof of beyond a reasonable doubt in mind, 'fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions', the jury's verdict should be allowed to stand."*Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991)(quoting *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989)). In the present case, sufficient evidence was introduced whereby a reasonable jury could have found Sheffield guilty of the crime charged. Although none of the items taken were ever recovered, there was eyewitness testimony by both Carpenter and Madison confirming that they saw Sheffield enter the Jolly home and leave with heaters and a door. Based upon this testimony, it is possible for a reasonable juror to conclude beyond a reasonable doubt that Sheffield did indeed burglarize the Jolly house. Accordingly, the denial of both the directed verdict and the motion for JNOV was proper.

## II. WHETHER THE COURT ERRED BY FAILING TO GRANT A NEW TRIAL

¶16. A motion for a new trial falls within a lower standard of review than does that of a judgment notwithstanding the verdict or a directed verdict. A motion for a new trial simply challenges the weight of the evidence. "The Supreme Court will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion." *Gleeton* at 1088. "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). Likewise, factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993).

¶17. In the present case, the jury's resolution of the case did not present an "unconscionable injustice," and the State provided ample evidence to support the jury's conclusion. The jury heard the testimony of two witnesses who saw Sheffield enter the Jolly home and exit the home. The jury heard testimony by Madison that Sheffield requested his help in selling some stuff. The jury heard testimony by both Carpenter and Madison that Sheffield called an antique store. Both Madison and Carpenter testified that Sheffield placed two heaters on the back of Madison's truck. When told what he was doing was wrong, Sheffield replied, "it's no big deal."

¶18. The jury also heard testimony by Madison that Sheffield asked him for a screwdriver. Both Carpenter and Madison testified that they later saw Sheffield carry a large white door from the Jolly house. The jury heard testimony that a white truck later came and picked up Sheffield, the four heaters and the door. These eyewitness accounts, along with evidence offered by the police officers that Sheffield was at the house when they arrived, indicates that the verdict was not contrary to the overwhelming weight of evidence in this case. Therefore, the circuit court did not abuse its discretion by denying Sheffield a new trial.

## CONCLUSION

¶19. "A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict." *Groseclose* at 300. "It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Id*. In the present case, sufficient evidence was presented such that a reasonable and fair-minded juror could find Sheffield guilty. Similarly, the lower court did not abuse its discretion by denying Sheffield's motion for a new trial. The eyewitness testimony, along with the testimony of officers and detectives, supports the conviction. Accordingly, the Lauderdale County

Circuit Court's judgment denying Sheffield's motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial is affirmed.

¶20. **CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCE SHALL NOT BE SUSPENDED OR REDUCED NOR SHALL APPELLANT BE ELIGIBLE FOR PROBATION, PAROLE OR ANY TYPE OF EARLY RELEASE.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**