# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01854-SCT

*MICHAEL TOWNSEND*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/2005 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PAMELA A. FERRINGTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/12/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Michael Townsend was indicted by a grand jury in Claiborne County, Mississippi, on Count I aggravated assault of Antonio Hill, Count II aggravated assault of Shirley Darden, and Count III possession of a firearm by a convicted felon. Townsend waived his arraignment and entered a plea of not guilty. Townsend was tried before a jury in Claiborne County, Mississippi. The jury convicted Townsend on Count I of the indictment, aggravated assault of Hill, and Count III of the indictment, possession of a firearm by a convicted felon. Townsend

was found not guilty on Count II of the indictment, aggravated assault of Darden. Sammie Good, Claiborne County Circuit Clerk, testified that Townsend had a prior conviction for sexual battery in May 9, 1996. Good identified a copy of Townsend's sentencing order which provided that Townsend pled guilty to sexual battery and was sentenced to serve five years in the custody of the Mississippi Department of Corrections.

¶2. The trial court sentenced Townsend to serve a term of sixteen years in the custody of the Mississippi Department of Corrections on the aggravated assault count and a term of three years on the possession of a firearm by a convicted felon count with the sentences to run concurrently.

¶3. Townsend filed a motion for J.N.O.V., or alternatively, a new trial which was denied by the trial court. Townsend's trial counsel filed a notice of appeal and the necessary documents to perfect the appeal. Subsequently, Townsend filed a motion to proceed in forma pauperis and proceed pro se on appeal. Townsend filed a separate notice of appeal, designation of record, and affidavit of indigency. Townsend's trial counsel was allowed by the trial court to withdraw from Townsend's representation on appeal. The trial court then appointed Townsend new counsel to represent Townsend on the appeal. Townsend now appeals his conviction and sentence to this Court.

**FACTS**

¶4. On August 9, 2004, Officer Rachel Martin, dispatcher for the Claiborne County Sheriff's Department, received a 911 call around 10:44 p.m. The 911 call originated from 1003 Johnson Lane in Port Gibson, Mississippi. No one spoke to Officer Martin during the

2

911 call, but she heard voices in the background. Officer Martin sent officers to respond to the 911 call. The 911 call was played for the jury.

¶5. As Officer Martin testified, the tape of the 911 call reveals that no one spoke to Officer Martin during the 911 call. However, an argument can be heard on the tape. Due to the poor sound quality on the recording, only fragments of an argument in the background can be heard. The following can be heard on the tape: (1) "I'm tired of this," (2) "Tell him you don't love him," (3) "Who called," and (4) "Put the gun down."

¶6. Antonio Hill and Shirley Darden lived together at 1003 Johnson Lane. Hill and Darden had a ten-year-old-boy together that also lived at that address, as well as, a five-year- old girl that Darden had from another relationship. Hill testified that he originally thought the girl was also his child, but he later discovered that the girl was not his daughter. Hill testified that he continued to raise the girl as his own daughter.

¶7. According to Hill's testimony, on August 9, 2004, Townsend came to the trailer where Darden and Hill lived together. Darden had just arrived home and was taking a bath when Townsend arrived. Hill and the two children were also at home. Townsend entered the bathroom where Darden was bathing. The two then argued, and Townsend was demanding some answers. Hill requested Townsend leave the bathroom, but Townsend refused. Townsend wanted Darden to tell Hill that she did not love him and that she was going to be with Townsend.

¶8. Hill testified that he dialed 911 to get Townsend out of the house when he refused to leave the bathroom. Hill testified that he did not speak to anyone on the telephone because

3

Townsend pointed a revolver at him. Townsend pulled the trigger, but the gun misfired. Hill testified that he retrieved his gun from the top of his closet. Townsend left the bedroom and went into the living room. Hill exited the bedroom. Townsend and Hill then exchanged gun fire inside the trailer.

¶9. In her statement given at the hospital to the investigators, Darden stated that Townsend had come into the bathroom where she was bathing. Hill was present, and Townsend refused to leave. She stated that Townsend started the gun fire, and she was shot during the gun fire exchange between Townsend and Hill. However at trial, Darden changed her account of the events. At trial, Darden testified that she and Townsend were "friends," but she did not want Hill to know that they were "friends friends." She testified that when she arrived home that night Townsend was waiting for her. Townsend then came inside. Darden testified that she was sitting on the bed when Townsend and Hill came into the room. Darden testified that she started laughing when Hill asked what was going on. She testified that she did not want to discuss her friendship with Townsend in front of Hill.

¶10. Deputy Sheriff Erika Nash, along with two other deputies, responded to the 911 disturbance call. When Deputy Nash arrived at the address, she heard gunshots. Deputy Nash observed Darden run out of the trailer. Darden told Deputy Nash that she had been shot. Then, Deputy Nash observed Hill come out of the trailer. Hill was holding a .380 automatic pistol. He placed the gun on the ground. Finally, Townsend also came out of the trailer. Townsend had been shot and was bleeding. Townsend did not exit the trailer with a gun, but a .38 Smith and Wesson pistol was recovered just inside the trailer door. Deputy Nash did not know who

4

owned the .38 Smith and Wesson pistol or who placed it in the doorway. Deputy Nash testified that she did not realize that Hill had also been shot until he was placed in the patrol car.

¶11. Sheila McAlpin, Darden's sister, gave a statement to the officers that Townsend had been to her house that night looking for Darden. Townsend was angry and had a pistol in his front left pocket of his pants. According to McAlpin, Townsend asked her, "had I seen my bitch ass sister, which he was referring to Shirley Darden." In her statement, McAlpin told the investigators that Townsend told her that he "was going to set [sic] out in town and wait on Shirley Darden and follow her home." He then said, "he was tired of people cheating on him, and one of these bitches is going to die tonight." Townsend told McAlpin that he meant either Hill or Darden was going to die.

¶12. At trial, McAlpin recanted her statement and testified that she did not see Townsend that day. McAlpin testified that she made up the story because she was afraid of Hill. However, she testified that she never reported any alleged threats by Hill to law enforcement.

¶13. Connie Scott, McAlpin's next door neighbor, testified that on August 9, 2004, he saw Townsend at McAlpin's trailer. Scott identified Townsend for the record as the person he saw that night. Scott testified that he saw Townsend and McAlpin talking. Scott testified that he remembered the day he saw Townsend talking to McAlpin because it was the same day as the shooting. Scott stated that it was the same night that he went to the trailer to watch the children when Darden was carried to the hospital.

¶14. In her statement given to the investigators, Darden stated that Townsend fired a handgun first. After Townsend fired his gun in the trailer, Hill retrieved his gun to defend himself. At

5

trial, Darden recanted her statement claiming that she was afraid of Hill when she made the statement.. Darden's testimony at trial contradicted her prior statement to the investigators. She testified that Hill shot Townsend. Despite the fact that Hill was also shot, Darden testified at trial that Townsend did not shoot Hill.

¶15. Townsend testified that on the night of the shooting it was Hill that wanted the three of them, Townsend, Darden, and Hill, to sit down and discuss Darden's relationship with Townsend. Townsend testified that the three of them sat in the living room to talk. Townsend testified that Hill left the room and then came back into the room and began shooting. Townsend testified that he neither shot nor fired any weapon at Hill, and he never had a gun that night.

¶16. Hill testified that he was no longer involved in a relationship with Darden. Hill testified at trial that to his knowledge, Darden was still involved in a relationship with Townsend, and Darden currently lived with Townsend. Townsend testified that Darden never moved in with him. Townsend testified that he and Darden are friends and talk on the telephone. Townsend testified that he knew Darden approximately six months to a year before he ever met Hill. Townsend testified that at the time he and Darden became friends and started calling each other, he was married.

## DISCUSSION

### I. Motion to Dismiss the Indictment

6

¶17.    Both Hill and Townsend were arrested and charged with aggravated assault.  On appeal, Townsend alleges that Hill was no-billed by the grand jury.  Townsend further alleges on appeal that Hill's brother-in-law, Larry Clark, was a member of the grand jury panel.

¶18.    There is no document in the record that shows that Hill was ever no-billed by the grand jury.  Likewise, when questioned on cross-examination by the defense, Hill was not asked if the grand jury issued a no-bill as to him.  Further, the record does not contain a list of the grand jury members that indicted Townsend.  The record only contains Townsend's indictment, "A True Bill."  Townsend's indictment is signed by the foreperson of the grand jury and the assistant district attorney.  While the foreperson's name is not legible, the signature is clearly not Larry Clark.

¶19.    That being said, Townsend's assignment of error on appeal is flawed since Townsend's trial counsel did not have the trial court hear the motion to dismiss the indictment.  Townsend failed to present this issue to the trial court.  The record does not contain a ruling from the trial court on the motion to dismiss the indictment.

¶20.    On appeal, Townsend states that this issue was never heard by the trial court in order for the trial court to inquire into the matter and determine whether Hill's brother-in-law exercised any actual influence over the grand jury.  Townsend properly cites to this Court's holding in *Culp v. State*, 933 So. 2d 264 (Miss. 2005), regarding the standard of review when the grand jury's indictment is challenged on appeal.  In *Culp*, this Court held:

> Once a grand jury has been sworn and empaneled, no objection can be raised except as to fraud, according to Miss. Code Ann. [§ ] 13-5-43. n10 [.] *See Polk v. State*, 288 So. 2d 452 (Miss. 1974).  In a more recent case, this

7

Court held that grand jury proceedings are sacred, and courts cannot go behind an indictment and inquire into evidence considered by a grand jury. ***Hood v. State***, 523 So. 2d 302, 306 (Miss. 1988) (citing ***State v. Matthews***, 218 So. 2d 743 (Miss. 1969); ***Case v. State***, 220 So. 2d 289 (1969)). **The sole inquiry for an appellate court is whether the grand jury was subjected to improper influences.** *Id*. at 307. **Absent evidence that a member of the grand jury acted with malice, hatred, or ill will, or fraud, or otherwise violated the oath taken by grand jurors, it is presumed that the grand jurors did not improperly or illegally act in returning the indictment against the accused.** ***Southward v. State***, 293 So. 2d 343, 344 (Miss. 1974). The circuit court's factual determinations related to this issue are reviewed by this Court only for clear error. ***Morris v. State***, 777 So. 2d 16, 24 (Miss. 2000). However, the trial court's conclusions of law are reviewed de novo. ***Palm v. State***, 748 So. 2d 135 (Miss. 1999); ***Entergy Miss., Inc. v. Burdette Gin Co.***, 726 So. 2d 1202, 1204 (Miss. 1998).

933 So. 2d at 281 (emphasis added). However, Townsend failed to present this issue to the trial court. As such, there was never any inquiry into whether any of the grand jurors were submitted to any improper influence.

¶21. Not only does the record reveal that Townsend never presented the motion to dismiss the indictment to the trial court, Townsend further failed to raise the issue of the grand jury's indictment in his motion for J.N.O.V., or alternatively, a new trial. Therefore, Townsend has waived this issue our for appellate review. *See* ***Shavers v. State***, 455 So. 2d 1299, 1302 (Miss. 1984) ("We will not put the trial court in error on an issue not placed before it and we must deem this ground to have been waived.") (citing ***Ponder v. State***, 335 So. 2d 885 (Miss. 1976)). The assignment of error is without merit.

## II.    J.N.O.V. and Weight of the Evidence

8

¶22. Townsend made a post-trial motion for J.N.O.V, or alternatively, a new trial. The trial court subsequently entered its order overruling Townsend's motion for J.N.O.V., or alternatively, a new trial.

### A. J.N.O.V.

¶23. A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied Townsend's motion for J.N.O.V.

¶24. In *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) this Court set out the standard of review for legal sufficiency as follows:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

*Bush*, 895 So. 2d at 843. The Court stated:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every

9

element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70 . . . .

895 So. 2d at 843.

¶25.    Considering the evidence in the light most favorable to the State, there was sufficient evidence to support Townsend's conviction for the aggravated assault of Hill, pursuant to Miss. Code Ann. § 97-3-7(2), and the possession of a firearm by a convicted felon, pursuant to Miss. Code Ann. § 97-37-5(1).    Miss. Code Ann. § 97-3-7(2) defines aggravated assault as follows:

> A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm;

Miss. Code Ann. § 97-37-5(1) states what constitutes possession of a firearm by a convicted felon as follows:

> It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the U.S. Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

¶26.    Townsend argues that the facts of the case did not support his conviction.    Townsend claims that the elements of the crimes were not proven.    However, a review of the record disputes Townsend's assertion and demonstrates that the elements of the crimes of aggravated

10

assault as defined in Miss Code Ann. § 97-3-7(2) and § 97-37-5(1) were met. Townsend argues on appeal that J.N.O.V. was appropriate because Darden and McAlpin recanted their earlier statements at trial.

¶27. However, the jury was left the responsibility to weigh the credibility of these witnesses' testimony at trial. As this Court has repeatedly held, the jury is the final arbiter of a witness's credibility. *Spicer v. State*, 921 So. 2d 292, 312 (Miss. 2006); *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996). In *Spicer*, 921 So. 2d at 311 (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)), this Court stated:

> Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. [This Court] may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

¶28. Here, the jury heard Darden's and McAlpin's testimony at trial and the questioning regarding their prior statements made to investigators. Furthermore, the jury heard testimony from Scott that contradicted McAlpin's testimony at trial that she had not seen Townsend on August 9, 2004. McAlpin had given a statement to the investigators that Townsend had been to her house that night looking for her sister, Darden, and Townsend was angry and had a pistol in his front left pocket of his pants.

¶29. At trial, she claimed that she had not seen Townsend. Scott contradicted McAlpin's version of events at trial. Scott identified Townsend as the person he saw that night talking to McAlpin. Scott testified that he remembered that it was the same day as the shooting when

11

she saw McAlpin talking to Townsend because he went to the trailer to watch the children when Darden was carried to the hospital for the gun shot wounds.

¶30. Darden also testified contrary to her statement to investigators. In her statement, Darden stated that Townsend fired a handgun first. After Townsend fired his gun in the trailer, Hill then retrieved a gun to defend himself from Townsend. At trial, Darden testified that not only did Hill fire first, but Townsend never had a gun and never shot at Hill. However, the record reflects that Hill was shot in the altercation.

¶31. Hill testified that he was the one that dialed 911 trying to get Townsend out of the trailer when he refused to leave. Hill testified that he did not speak to anyone during the 911 call because Townsend pointed a revolver at him. According to Hill, Townsend pulled the trigger, but the gun misfired. Hill testified that he then retrieved his gun from the top of his closet. Townsend and Hill then exchanged gun fire inside the trailer.

¶32. Officer Martin testified that no one spoke to her during the 911 call. However, she "could hear voices, people speaking." Officer Martin testified that the nature of the 911 call was a disturbance call, and her testimony provided the telephone number and address where the disturbance call originated. Based on the 911 call, officers were dispatched to the address where Hill and Darden lived together. The 911 call that was played to the jury demonstrated that a disturbance was in process. When the officers arrived, Hill, Darden, and Townsend had been shot.

¶33. Hill testified that at the time of trial he was no longer in a relationship with Darden. To his knowledge, Darden and Townsend were still involved in a relationship together. Hill

12

further testified that Darden and Townsend lived together. However, Townsend testified that Darden never moved in with him and that he and Darden are just friends who talk on the telephone.

¶34. The record reflects that there was legally sufficient evidence to convict Townsend of the aggravated assault of Hill and possession of a firearm by a convicted felon under Mississippi law. Accordingly, we find that the trial court did not err in overruling Townsend's motion for J.N.O.V.

### B. New Trial

¶35. A motion for new trial challenges the weight of the evidence. ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. ***Id***. In ***Bush***, 895 So. 2d at 844, this Court set out the standard of review for weight of the evidence as follows:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. ***Amiker v. Drugs For Less, Inc***., 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. ***Herring***, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. ***Id***. This difference of

opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id*. Instead, the proper remedy is to grant a new trial.

¶36. Here, no new trial is warranted as the jury's verdict is consistent with the weight of the evidence. Sitting as the "thirteenth juror," we find that the evidence, weighed in the light most favorable to the verdict, supports the jury's resolution of the conflicting testimony. Without re-discussing the facts already stated within this opinion, the jury heard the testimony from all the witnesses called by the State, including Hill and Darden, as well as, Scott's testimony on rebuttal. The jury also heard the defense's witness, Townsend, testify. The jury heard all the testimony and determined that based on the evidence presented Townsend was guilty of Count I of the indictment, aggravated assault of Hill, and Count III of the indictment, possession of a firearm by a convicted felon, but not guilty as to Count II of the indictment, aggravated assault of Darden.

¶37. On the record, the weight of the evidence presented by the State supported the jury's verdict. Accordingly, we find that the trial court did not err in overruling Townsend's motion for a new trial.

## CONCLUSION

¶38. For the foregoing reasons, we affirm the judgment of the Circuit Court of Claiborne County, Mississippi.

¶39. **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS,**

14

**AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT III.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**