# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01643-SCT

*GUS WILKINS, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2007 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. DANIEL HINCHCLIFF |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/04/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    Gus Wilkins, Jr. was indicted for the sexual battery of sixteen-year-old M.B. Following a jury trial in the Circuit Court of Lowndes County, Mississippi, Wilkins was found guilty and sentenced to twenty years in the custody of the Mississippi Department of Corrections ("MDOC"), followed by five years post-release supervision. Following denial of his post-trial motions, Wilkins filed notice of appeal.

**FACTS**

¶2.     On July 26, 2006, M.B. was introduced to thirty-year-old Wilkins by his mother, Gloria Wilkins. According to M.B., Gloria told her that Wilkins was her cousin. The following evening, at approximately 9:30 or 10:00 p.m., M.B. arrived at Sims Scott Park. Shortly thereafter, M.B. sent a text message to her cousin, Demetrius Palmer, requesting that he pick her up. M.B. testified that Palmer "told me he would be there in a minute . . . . But it took a long time, so I texted him and told him that I would walk." According to M.B.:

> [w]hen I started to walk, [Wilkins] walked up in the park . . . and it was two other guys there. And he was introducing me saying I was . . . his little cousin. And he asked me where I was going. I told him I was going to Gerald's house. And he said he was going that way because he was going to his mother's house[1] and he will walk with me.

M.B. testified that "I thought I was safe because his mother introduced me as his cousin. . . . [A]nd I trusted . . . his mother."

¶3.     According to M.B., as they approached Gerald's apartment,[2] Wilkins "grabbed me by my neck and told me if I made a sound that he would snap my neck." M.B. testified that she did not scream "[b]ecause I was scared" and "I was thinking if I did say anything or if I made any noises that he probably would snap my neck. And then no one would be able to find

_____

[1]M.B. testified that Gerald lived in the same apartment complex as Gloria Wilkins.

[2]M.B. testified that they were approximately twenty feet away.

2

me."[3]  According to M.B., she did not see anyone outside[4] and Wilkins took her to "an old abandoned house like a block away."  Inside the abandoned house, M.B. testified that Wilkins removed her clothes, laid her on the glass-laden floor, began licking her body,[5] placed his hands around her neck and "made me put my mouth on his private part[,]" and "[a]fter that . . . took his private part and stuck it between my legs."  M.B. stated that she did not scream or attempt to get away "[b]ecause he's bigger than me."  Thereafter, according to M.B., Wilkins "walked me down the street from the abandoned house to Gerald's house and told me to tell my brothers and them that he will be down there in a minute like he didn't do anything."

¶4.     When M.B. arrived at Gerald's apartment, Palmer testified that "she wasn't herself."  According to Palmer, M.B. "was sitting there looking all sad, had little tears in her eyes."  M.B. then requested that Palmer take her home.  While driving, Palmer repeatedly asked M.B. what was wrong, but only after they were near her home did she discuss the incident.  Upon arriving home, M.B. got in the bathtub because she "felt dirty[,]" and threw her clothes in the trash because she "didn't want them any more."  Thereafter, M.B. was taken to the

---

[3]M.B. estimated that she was 5'2" and weighed 137 pounds at the time, while Wilkins was 6'1" and weighed 180 pounds.  Officer Louis Alexander of the Columbus Police Department also testified that Wilkins was much bigger and stronger than M.B.

[4]M.B. estimated that it was then 10:20 p.m.  During Wilkins's case-in-chief, he offered the testimony of area resident Diane DeGraffenreid that on summer evenings, even around 9:30 or 10:00 p.m., there are "[k]ids out riding their bikes, playing, or playing ball, or somebody . . . usually out doing the yard or just out barbecuing . . . ."  However, DeGraffenreid further testified that "[o]n that particular night, I don't remember anything."

[5]At this point, M.B. testified that Wilkins stated "he had been watching me for a while."

3

hospital.[6]  In the emergency room, M.B. recounted the incident to nurse Amy Riley, who completed a rape kit, during which a "white substance" was found in M.B.'s vaginal vault.

¶5.     Sergeant Gary Moore of the Columbus Police Department subsequently took a written statement from M.B. and then obtained an arrest warrant against Wilkins for sexual battery. During processing at the police department, Wilkins asked Moore if he could smoke a cigarette. According to Moore, "I took him out back . . . behind the police department to let him smoke. While we were standing out back, [Wilkins] just made the statement to me that he did not have sex with [M.B.]." Moore then "asked [Wilkins] if he did not have sex with her, would he submit to a DNA test by drawing . . . blood. And he said that he would."

¶6.     Wilkins subsequently was indicted for sexual battery pursuant to Mississippi Code Annotated Section 97-3-95 (Rev. 2006).[7]  The indictment provided, in pertinent part, that Wilkins "on or about the 27th day of July, 2006 . . . did unlawfully, wilfully, and feloniously, engage in sexual penetration with [M.B.], *without her consent . . . .*" (Emphasis added). On September 4, 2007, the jury trial commenced. Wilkins's opening statement framed the major issue for trial as "whether or not the sexual encounter between [M.B.] and Wilkins was consensual or not." The parties stipulated that "upon DNA testing, it was determined that [Wilkins] was . . . the source of the semen found in [M.B.'s] vaginal vault." After presenting the aforementioned facts, *see* paragraphs 2-5 *supra*, the State rested and Wilkins moved for

---

[6]According to M.B., "on our way to the hospital, we stopped at a card game where we found [Gloria] and told her about it. She said do what you have to do." Gloria testified that M.B. had informed her that the incident occurred at Sims Scott Park.

[7]Wilkins was also indicted for burglary of a dwelling, which "is not implicated in this appeal."

4

a directed verdict, which was denied by the circuit court. Wilkins then presented testimony from three witnesses, none of whom offered substantive proof on the issue of consent. Thereafter, the jury found Wilkins guilty as charged. At the sentencing hearing, the circuit court sentenced him to serve a term of twenty years in the custody of the MDOC to be followed by five years post-release supervision. On September 7, 2007, Wilkins filed a "Motion for Judgment Notwithstanding the Verdict or in the alternative for New Trial," which was denied by the circuit court. Wilkins then timely filed notice of appeal.

## ISSUE

¶7.     This Court will consider:

(1) Whether the jury verdict was against the sufficiency and weight of the evidence.

## ANALYSIS

### I.      Whether the jury verdict was against the sufficiency and weight of the evidence.

#### A. Sufficiency of the evidence.

¶8.     Mississippi Code Annotated Section 97-3-95(1)(a) (Rev. 2006) provides that "(1) [a] person is guilty of sexual battery if he or she engages in sexual penetration with: (a) Another person *without his or her consent* . . . ." Miss. Code Ann. § 97-3-95(1)(a) (Rev. 2006) (emphasis added). As the parties stipulated that Wilkins was "the source of the semen," the only disputed element is whether "the sexual encounter between [M.B.] . . . and Wilkins was consensual or not."

¶9.     Wilkins made a post-trial motion for judgment notwithstanding the verdict ("JNOV"), which was denied by the circuit court. "A motion for J.N.O.V. challenges the legal

5

sufficiency of the evidence." *Ivy v. State*, 949 So. 2d 748, 751 (Miss. 2007) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). In *Bush v. State*, 895 So. 2d 836 (Miss. 2005), this Court set out the standard of review for legal sufficiency, stating:

> whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." [*Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)]. However, this inquiry does not require a court to[:]
>
>> 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)) . . . . However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70 . . . .

*Bush*, 895 So. 2d at 843.

¶10. This Court has stated that:

> [o]ur case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the

6

conduct of the victim is consistent with the conduct of one who has been victimized. The victim's physical and mental condition after the incident, as well as the fact that the incident was immediately reported is recognized as corroborating evidence.

*Ladnier v. State*, 878 So. 2d 926, 931 (Miss. 2004) (quoting *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998)). According to M.B., Wilkins grabbed her and threatened to "snap" her neck, led her into an abandoned house, and then sexually battered her. Following the incident, Palmer testified that M.B. "wasn't herself" and "had little tears in her eyes." Soon thereafter, M.B. reported the incident to Palmer. M.B. added that when she arrived home, she threw away her clothes and took a bath because she "felt dirty." At the hospital, the version of the incident which M.B. recounted to Riley was substantively identical to her testimony. For instance, according to Riley:

> [M.B.] said that she was walking home with a man named Mr. Wilkins, that she found out was her cousin. And that he, on the way home, kind of had walked behind her and put his arm around her neck and told her to be quiet or that he would snap her neck . . . if she was loud.
>
> So, then he proceeded to take her pants off and continue with the sexual assault.

Regarding the lack of consent, this Court finds no "other credible evidence" to discredit or contradict M.B.'s testimony. *Id*. While M.B. did not identify Wilkins in the courtroom, the parties stipulated that he was "the source of the semen . . . ." As such, this and any other minor inconsistencies between M.B.'s testimony and that of other witnesses were matters of credibility to be weighed and resolved by the jury. *See Ladnier*, 878 So. 2d at 931; *Collier*, 711 So. 2d at 462 ("[o]ur case law is axiomatic on the proposition that the jury is arbiter of the credibility of testimony."). While Wilkins attacks M.B.'s credibility, her testimony was

7

not sufficiently discredited to warrant overruling the verdict. Accordingly, "any rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State[,]" ***Bush***, 895 So. 2d at 844, in proving sexual battery. Therefore, this Court finds that the circuit court did not err in denying Wilkins's motion for JNOV, and this issue is without merit.

### B. Weight of the evidence.

¶11. Wilkins made a post-trial motion for new trial, which was denied by the circuit court. "A motion for new trial challenges the weight of the evidence. ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court *abused its discretion* in denying a motion for new trial." ***Ivy***, 949 So. 2d at 753 (emphasis added). In ***Bush***, this Court set out the standard of review for weight of the evidence,[8] stating:

> [w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial:
>
> > the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000). . . . [T]he evidence should be weighed in the light most favorable to the verdict. ***Herring***, 691 So. 2d at 957.

---

[8]"A motion for a new trial falls within a *lower standard of review* than does that of a judgment notwithstanding the verdict or a directed verdict." ***Sheffield***, 749 So. 2d at 127 (emphasis added).

*Bush*, 895 So. 2d at 844.

¶12. Viewing the evidence discussed in Issue I. *supra* "in the light most favorable to the verdict," this Court cannot conclude that the circuit court erred in affirming the jury's verdict, thus "sanction[ing] an unconscionable injustice." *Id*. In short, the evidence does not "preponderat[e] heavily against the verdict." *Id*. (quoting *Amiker*, 796 So. 2d at 947). Accordingly, this Court finds that the circuit court did not abuse its discretion in denying Wilkins's motion for new trial, and this issue is without merit.

## CONCLUSION

¶13. Based upon the aforementioned analysis, this Court affirms the order of the Circuit Court of Lowndes County which denied Wilkins's "Motion for Judgment Notwithstanding the Verdict or in the alternative for New Trial."

¶14. **CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS POST-RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., NOT PARTICIPATING.**