# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-02303-SCT

*MICHAEL IVY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2005 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVEN CARL WALLACE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Michael Ivy (Ivy) was indicted in a two-count indictment – Count I: engaging in the sexual battery of A.B., a child under the age of fourteen and/or twenty-four months younger than Ivy, in violation of Miss. Code Ann. § 97-3-95, and Count II: fondling A.B., in violation of Miss. Code Ann. § 97-5-23.[1]  Ivy received a jury trial in the Circuit Court of Lowndes

---

[1]  "A.B." will be used to identify the minor child in this case.  Due to the issue raised by Ivy on appeal, it is necessary to discuss graphic facts involving the minor child.

County, Mississippi. Ivy was convicted of Count I: sexual battery and Count II: fondling. As to Count I, Ivy was sentenced as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections and fined $10,000. As to Count II, Ivy was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections to run consecutively with the sentence in Count I and fined $5,000. The trial court ordered that the sentences in Count I and Count II shall not be reduced or suspended, nor shall the defendant be eligible for parole or probation. Ivy now appeals to this Court, raising the following assignment of error: whether the verdict was against the overwhelming weight of the evidence.

## FACTS

¶2. On June 2, 2004, A.B., age 13, awoke at approximately 3:00 a.m. to find her stepfather, Ivy, with his head between her legs. A.B. testified that Ivy tried to stick his thumb inside her, but she rolled over when he tried. She stated that the pain caused by Ivy trying to stick his thumb in her caused her to wake up. Ivy stuck his tongue inside her vagina.

¶3. Ivy had pulled her panties off of her, and the panties were on the floor. Ivy pulled up A.B.'s shirt and licked her chest. At the time, A.B. was in the bedroom that she shared with her younger sister, who was asleep. A.B. testified that she did not scream because she was afraid of Ivy becoming violent. A.B. testified that Ivy had been violent with her mother in the past. A.B. also testified that she was positive that it was Ivy who licked and touched her, because she could see his face. When he was licking her, she could see the top of his face

2

and the back of his head. A.B.'s television was on in her room at the time. Ivy was wearing only his boxers (underwear).

¶4. Ivy told A.B. not to tell her mother what happened. A.B. testified that she pulled her covers over her head and started crying. A.B. testified that after Ivy left her room, he went to the bathroom, and she heard him running water. Ivy then went to her mother's room. A.B. testified that when her mother came into her room, she did not tell her what had happened. Instead, A.B. told her mother that she had a bad dream about her grandmother. After her mother left, A.B. fell asleep.

¶5. The next morning, A.B. again told her mother that nothing was wrong. A.B.'s grandmother took her to Bible school. After Bible school, A.B., her grandmother, and her younger cousin, T.R., all went to the grocery store.[2] A.B. confided in her cousin what had happened to her. T.R. told A.B.'s uncle what had happened, and he told A.B.'s grandmother. A.B.'s grandmother told her mother. A.B. subsequently spoke to a police officer about what had happened.

¶6. On cross-examination, the defense inquired as to how A.B. knew that it was 3:00 a.m. when Ivy came into her room and began licking her. A.B. clarified that she had an alarm clock in her room and she saw that it was 3:00 a.m. when she woke up.

¶7. Ivy testified that he was 37 years old at the time of the trial. Ivy had two prior felony convictions in Monroe County, Mississippi, for the sale of cocaine and served five years in

---

[2] " T.R." is substituted for the cousin's name.

prison on those convictions. Ivy testified that A.B. made the allegations to get him out of the house. Ivy testified that he was using drugs a few months before he married A.B.'s mother. Ivy testified that the marriage was unhappy. Ivy testified that he stayed away from the house so as not to be around his stepchildren while he was using drugs. He stated that on June 2, 2004, he was not using drugs and did nothing to A.B.

¶8. Ivy testified that on June 2, 2004, he came home around 2:30 a.m. He stated that he went through the house and checked on the "kids" and rubbed them on their heads. He testified that he got into bed at approximately 2:36 a.m. and had sex with his wife. He stated that he then went to sleep and slept until his wife woke him up as she was going to work.

¶9. A.B.'s mother, C.D., testified that Ivy moved in with her in April, and they were married in May.[3] They lived in Caledonia, Lowndes County, Mississippi. However, C.D. stated that Ivy was hardly there even after they got married. At night, Ivy was usually not at home. Ivy stayed in Amory, Mississippi, primarily, even after they were married. C.D. testified that on June 2, 2004, Ivy came into the bedroom at 2:36 a.m. and woke her up. C.D. stated that the room was dark when Ivy woke her up so she looked at the clock. Ivy wanted to have sex, so they had sex.

¶10. After he finished, she went into her daughters' bedroom. A.B. was sobbing. A.B. told her that she had a bad dream about her grandmother. C.D.'s other daughter was still asleep. The next morning, C.D. went to work from 7:00 a.m. until 9:00 a.m. When she came home,

---

[3] "C.D." is used to identify A.B.'s mother.

C.D. cooked breakfast and saw her children. Ivy was still there asleep. A.B. told her that nothing was wrong. C.D. had to be back at work at 11:00 a.m. and did not return home until close to 8:00 p.m. C.D. found no one at home when she arrived. C.D. then received a telephone call from her brother. After speaking to her brother, C.D. called Ivy and asked what he did to A.B. Ivy denied doing anything to A.B.

¶11. Investigator Tony Perkins of the Lowndes County Sheriff's Department investigated the allegations. Investigator Perkins spoke with A.B.'s uncle and his son, T.R. Investigator Perkins spoke to A.B. with her uncle present. A.B.'s mother already had been transported to the hospital by ambulance. C.D. had become upset upon learning what had happened to her daughter. A.B. provided a written statement. Three weeks later, Ivy was located in Monroe County. Ivy was transported back to Lowndes County.

¶12. Before questioning Ivy, Investigator Perkins advised him of his rights, and Ivy signed a waiver of his rights. Investigator Perkins testified that Ivy told him that he had done "a lot of drugs" that night and he did things he normally would not do. He stated that "he may have done what he was accused of and just not remember it, because of the drugs." However, Investigator Perkins testified that Ivy did not want those things in his written statement. Investigator Perkins typed the statement that Ivy signed. In the signed statement, Ivy stated in pertinent part:

> I got married on May 10th of this year. Shortly after that, I got on drugs. I was really doing drugs about a month before I got married. I was on crack and cocaine.

I did not do anything out of the way to my stepdaughter. I may not remember everything that happened that night, but I do know that I did not do anything wrong with my stepdaughter.

## DISCUSSION

### I. J.N.O.V. and Weight of the Evidence

¶13. Ivy made a post-trial motion for J.N.O.V, or alternatively, a new trial. The trial court subsequently entered its order denying Ivy's motion for J.N.O.V., or alternatively, a new trial. On appeal, Ivy raises only the issue of whether the verdict was against the overwhelming weight of the evidence. However, Ivy briefly discusses the sufficiency of the evidence in the context of his discussion of the weight of the evidence. Since this Court has tried to distinguish the two issues, we will address the two as separate and distinct assignments of error.

### A. J.N.O.V.

¶14. Ivy made a post-trial motion for J.N.O.V. The trial court subsequently entered its order denying Ivy's motion for J.N.O.V. A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied Ivy's motion for J.N.O.V.

¶15. In *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), this Court set out the standard of review for legal sufficiency as follows:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the

6

face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

The Court stated:

Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); see also *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

*Bush v. State*, 895 So. 2d at 843.

¶16.    Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to support a conviction of sexual battery and fondling. Miss. Code Ann. § 97-3-95 (1), relating to sexual battery, provides:

(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:

(a) Another person without his or her consent;

(b) A mentally defective, mentally incapacitated or physically helpless person;

(c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or

7

(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.

Miss. Code Ann. § 97-5-23, relating to fondling, provides:

(1) Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.

(2) Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court. A person in a position of trust or authority over a child includes without limitation a child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

¶17. There is no need to restate the facts in great detail that are provided in the facts section of the opinion. A.B. testified that Ivy licked her everywhere, including between her legs and her chest. Ivy penetrated A.B.'s vagina with his tongue. Ivy pulled off A.B.'s panties in order to fondle and lick her. He pulled up her shirt to lick her chest. He tried to insert his

thumb inside A.B. A.B. was thirteen years old at the time, and Ivy was her stepfather. A.B. was able to see Ivy's face when he was licking her, and A.B. identified Ivy in court for the record as the man who had performed those acts on her. A.B. was afraid Ivy would become violent if she told her mother or screamed for help.

¶18. Ivy argues that there were inconsistencies between A.B.'s statements made to law enforcement officials and her testimony at trial. Ivy states that no exhibits were introduced at trial to prove his guilt. Ivy argues that there were inconsistencies regarding the time that the alleged conduct occurred. The jury heard testimony from A.B. and the defendant, Ivy, as to the allegations. The jury also heard from A.B.'s mother, C.D. The defense had the opportunity to cross-examine A.B. as to any discrepancies in her statements and testimony.

¶19. Despite any discrepancies in the witnesses' testimony, the jury was left with the responsibility to weigh the credibility of these witnesses' testimony at trial. As this Court has repeatedly held, the jury is the final arbiter of a witness's credibility. *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996); *see also* *Spicer v. State*, 921 So. 2d 292, 312 (Miss. 2006). In *Spicer v. State*, 921 So. 2d at 311 (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)), this Court stated:

> Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. [This Court] may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

¶20. Considering the evidence in the light most favorable to the State, there was sufficient evidence to convict Ivy of sexual battery and fondling. Accordingly, we find that the trial

9

court did not err in denying Ivy's motion for J.N.O.V. This assignment of error is without merit.

**B.      New Trial**

¶21.    A motion for new trial challenges the weight of the evidence. ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. ***Id***. In ***Bush***, 895 So. 2d at 844, this Court set out the standard of review for weight of the evidence as follows:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. ***Amiker v. Drugs For Less, Inc***., 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. ***Herring***, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. ***Id***. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. ***Id***. Instead, the proper remedy is to grant a new trial.

¶22.    Without re-discussing the testimony already stated within this opinion, the jury heard the testimony from all the State's witnesses, including the defense's cross-examination of those witnesses. A.B. testified in graphic detail as to the licking and touching that she endured from Ivy. Ivy exercised his right to testify, and testified that he did nothing wrong

10

to A.B. Ivy testified that A.B. just wanted him out of the house. Investigator Perkins testified regarding what Ivy stated in his written statement as well as statements Ivy made that he did not want in the written statement. After considering the evidence presented, the jury returned a conviction against Ivy for sexual battery and fondling.

¶23. Here, no new trial is warranted, as the jury's verdict is consistent with the weight of the evidence. Sitting as the "thirteenth juror," we find that the evidence weighed in the light most favorable to the verdict supports the jury's resolution of the conflicting testimony. Accordingly, the trial court did not err in denying Ivy's motion for a new trial.

## CONCLUSION

¶24. For the foregoing reasons, the judgment of the Circuit Court of Lowndes County, Mississippi, is affirmed.

¶25. **COUNT I: CONVICTION OF SEXUAL BATTERY AS A HABITUAL OFFENDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $10,000, AFFIRMED. COUNT II: CONVICTION OF FONDLING AS A HABITUAL OFFENDER AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $5,000, AFFIRMED. SAID SENTENCES SHALL NOT BE REDUCED, SUSPENDED, NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**