ROBERTS, J.,
for the Court.
STATEMENT OF THE CASE
¶ 1. At the conclusion of a month-long sale in July 2001 at Kirk Auto Group in Grenada, Mississippi,- it was discovered that two of the dealerships automobiles were missing. While one vehicle would be located shortly after it disappeared, a silver 1999 Ford Expedition remained lost, and Kirk Auto reported it stolen. Approximately two years later the Expedition was found. Lyndell Carter’s then-girlfriend was driving the Expedition when it was involved in a wreck. Inquiry at the scene led to the discovery that the vehicle had been reported stolen. Subsequent investigation revealed that Carter had taken the Expedition during Kirk Auto’s summer sale. Carter was then indicted, tried, convicted, and sentenced on the crime of motor vehicle theft. Aggrieved by this, he now appeals. Finding no error, we affirm.
FACTS
¶ 2. In July 2001, Kirk Auto conducted its annual summer sale. Prior to the sale, Jeff Counts, a manager at Kirk Auto, prepared the dealership by checking and accounting for those vehicles in inventory and placing the keys to each in the vehicles. Following the sale, Counts again conducted an inventory of Kirk Auto’s lot and discovered two vehicles were missing. A silver 1999 Ford Expedition and a silver 1999 Mercury Sable were unaccounted for. Over the next week Counts questioned Kirk Auto employees and owners as to the possible whereabouts of the automobiles, but to no avail. When they could not be located, Counts reported the two vehicles stolen. Both vehicles were listed as stolen in the National Crime Information Center (NCIC) database. Soon after, on July 20, 2001, the Sable was found. However, the Expedition remained missing, and Kirk Auto would eventually be compensated for the loss of the vehicle through a claim with its insurance carrier.
¶ 3. On June 23, 2003, the 1999 Expedition was found. Tonya Weathersby, Carter’s then girlfriend, was involved in a wreck in West, Mississippi while driving the Expedition. Officer Chad Smith was sent to investigate the accident. Once at the scene, Officer Smith ran the number of the tag on the Expedition and discovered that the tag had been issued for a red 1999 Dodge Ram truck. Weathersby was subsequently ticketed for switching the tag and for her failure to produce proof of insurance. Officer Smith then ran the Expedition’s vehicle identification number, and he was informed that the vehicle had been reported stolen. At this point Weathersby was taken to the West Police Station for questioning. However, while *35 Officer Smith was parking his vehicle, Weathersby left the station.
¶4. On June 24, 2003, Carter returned to Kirk Auto and claimed that he wanted to complete the purchase of the Expedition. He claimed that Counts gave him the keys to the vehicle with the expectation that Carter would return at some later time and purchase the vehicle. Counts denied this, explaining that he would never allow someone to use a Kirk Auto vehicle for two years without paying for it. Following an investigation of the matter, Carter was indicted on the theft of the Expedition. Additional facts will be discussed as needed below.
PROCEDURAL HISTORY
¶ 5. On June 29, 2004, the grand jury of Grenada County returned an indictment against Carter for the crime of motor vehicle theft in violation of Mississippi Code Annotated Section 97-17-42. Following Carter’s arraignment, he entered a plea of not guilty, and a trial was set for August 9, 2004, in the Circuit Court of Grenada County. At the request of Carter’s counsel, the trial was continued until January 25, 2005, and at its conclusion the jury was unable to agree on a verdict. Subsequently, a mistrial was declared by order of the circuit court filed June 9, 2005. By agreed order filed May 25, 2005, a second trial was scheduled for August 4, 2005. Following a presentation of the evidence and argument, Carter was found guilty. By judgment filed August 25, 2005, he was sentenced to serve a term of five years in the custody of the Mississippi Department of Corrections (MDOC) with four years suspended and one to serve. Additionally, the circuit court authorized the MDOC to place Carter in the Intensive Supervision Program of the MDOC for one year and, upon his release, ordered that Carter be placed on one year of supervised probation. Lastly, Carter was ordered to pay a fine of $1,000 and all court costs, fees, and assessments in the cause within eighteen months of the judgment. Carter then filed a motion for new trial on August 25, 2005. Among other assignments of error, Carter argued that the jury’s verdict was against the overwhelming weight of the evidence. Carter’s motion was denied. From the circuit court’s judgment of' August 25, 2005, and subsequent order overruling his motion for new trial, Carter timely appealed.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DENYING CARTER’S MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND NEW TRIAL.
A. Motion for New Trial
¶ 6. An appellate court will only reverse a trial court’s denial of a motion for new trial when it amounts to an abuse of discretion. Ivy v. State, 949 So.2d 748(¶ 21) (Miss.2007). Furthermore,
[w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on *36 the grounds that the verdict was against the overwhelming weight of the evidence, “unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.” Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (quoting Bush v. State, 895 So.2d 836(¶ 18) (Miss.2005) (internal citations omitted)).
¶7. After examining the vehicle’s title and explaining Kirk Auto’s system of tracking its vehicles, Counts stated that the Expedition was the property of Kirk Auto at the time of the theft. Counts testified that when he discovered the Expedition missing from the lot he asked everyone at Kirk Auto if they knew the whereabouts of the vehicle, but he did not locate it. However, on cross-examination Counts stated he did not ask Calvin Lawson, a Kirk Aut'o employee who primarily washed vehicles when they sold. Despite Carter’s claims to the contrary, Counts testified that he never authorized Carter to take or use the Expedition. The owners of Kirk Auto also testified that they did not give Carter permission to take or use the Expedition. During interviews throughout the investigation, Carter stated that the tag on the Expedition at the time of the accident was in the back seat when he took possession of the vehicle. However, Counts stated that any tag on the vehicle when it was acquired by Kirk Auto would have been either discarded by the dealership or taken by the previous owner. Counts further testified that Carter came to his office on June 24, 2003, and asked to complete the purchase of the Expedition. He again stated that he did not have any knowledge that Carter had the vehicle. Counts then stated that Carter came to his home at 11:00 p.m. sometime after June 24, 2003, and asked Counts to “tell the truth ... to say [Counts] gave him the key and let it all go away.”
¶ 8. Officer Smith testified that on June 23, 2003, when Weathersby was driving the Expedition and was involved in the accident in West, Mississippi, the number of the tag on the Expedition was F520WT. When he ran this tag number he determined that it was assigned to a red pick-up truck. Additionally, when Officer Smith ran the VIN of the Expedition he was informed that it had been reported stolen. However, on cross-examination he confirmed that an NCIC report listed the Expedition as recovered on July 20, 2001.
¶ 9. Detective Donald King with the Grenada Police Department testified that he visited Kirk Auto on July 20, 2001, to follow up on a report that one of the vehicles that was missing had been found. When he arrived, he was informed that the 1999 Mercury Sable had been located, but that the Expedition was still missing. During the trial, Detective King was shown a copy of the NCIC report which indicated that the Expedition had been found, and it listed Detective King as the individual who confirmed this information. He testified that this information was incorrect, and he did not provide that information. He concluded that his report detailing the July 20, 2001 discovery of the 1999 Mercury Sable was misread by the individual who updated the NCIC report.
¶ 10. Mike Poe, a business manager at Sunset Chrysler in Grenada, testified that in 1999 Carter leased a red 1999 Dodge Ram in the name of R.L. Robinson, a partner in a business Carter was involved with. He stated that Carter asked that the lease of the red pick-up be in his partner’s name. Poe testified that in or *37 der to lease through Chrysler they must receive a copy of the tag receipt for the vehicle. He further stated that the number of the tag assigned to the red 1999 Dodge Ram was F520WT. Poe then testified that in July 2001, at the request of Chrysler, Carter returned the 1999 Dodge Ram to Sunset. According to Poe’s testimony, when Carter returned the pick-up truck he took the tag with him.
¶ 11. Lawson testified that during Kirk Auto’s summer sale in July 2001, Carter drove the Expedition to the wash rack located at the back of the dealership lot. Lawson stated that Carter told him Counts wanted the Expedition washed. Lawson testified that he washed the vehicle and noticed that there was no tag on the Expedition. Lawson stated that once he finished washing the vehicle Carter drove off out the back gate.
¶ 12. Milton Williams, an investigator with the Mississippi Bureau of Investigation, testified that he was asked to investigate the disappearance and reappearance of the Expedition. He stated that at the close of his investigation, his conclusion was that Carter stole the Expedition. Williams testified, that during an interview with Carter, Carter stated that he had possession of the Expedition since 2001. According to Williams, Carter also stated that the tag on the Expedition at the time of the June 23, 2003 accident was in the back of the vehicle when he got it from Kirk Auto.
¶ 13. Byron Davis testified on behalf of Carter. Davis stated that he accompanied Carter in 2002 when Carter went to Kirk Auto and picked up a silver Expedition. Davis testified that “[Counts] handed him the keys.” He stated that after Counts gave Carter the keys, he told Carter it had already been washed and cleaned. Davis continued that at this point he left in the vehicle the two arrived in, and Carter followed soon after.
¶ 14. Carter was convicted of violation of Mississippi Code Annotated section 97-17-42, which makes it unlawful for “[a]ny person ... [to], willfully and without authority, take possession of or take away a motor vehicle belonging to another.... ” Miss.Code Ann. § 97-17-42(1) (Rev.2006). Viewing the evidence in a light most favorable to the verdict, we cannot say that to allow it to stand would amount to an unconscionable injustice. The testimony detailed above places Carter in the stolen Expedition during the 2001 summer sale and establishes that he drove the vehicle off the Kirk Auto lot in early to mid July 2001 without the authority to do so. Additionally, while Carter stated during his interview with Williams that the car tag on the Expedition was in the back of the vehicle when he took possession, the testimony shows that Carter did not find the tag in the back of the Expedition, but used the car tag from the leased 1999 Dodge Ram he was required to return in July 2001. While Carter claimed during interviews that Counts gave him permission to use the Expedition, and this version of events was corroborated by the testimony of Davis, the jury is the final judge of a witness’s credibility. Ivy, 949 So.2d at (¶ 19). As the supreme court stated in Ivy, “[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury.” Id. (citing Spicer v. State, 921 So.2d 292(¶ 38) (Miss.2006)). As such, we cannot say the trial court abused its discretion in denying Carter’s motion for new trial as the verdict was not against the overwhelming weight of the evidence. This issue is without merit.
B. Motions for Directed Verdict and Judgment Notwithstanding the Verdict
¶ 15. This Court’s review of the denial of a motion for directed verdict, or *38 of a motion for JNOV, is reviewed de novo. White v. Stewman, 932 So.2d 27(¶ 10) (Miss.2006). Unlike a motion for new trial, these challenge the sufficiency of the evidence rather than the weight. Id. at (¶¶ 10-11, 16). The critical inquiry in determining whether the evidence presented is sufficient to sustain a conviction is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Ivy, 949 So.2d at (¶ 15). However, a reviewing court is not required to
“ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Bush v. State, 895 So.2d 836(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979) (citations omitted)).
¶ 16. After reviewing the evidence presented at trial in the light most favorable to the prosecution, we cannot say that the evidence failed to establish the existence of every element of the crime with which Carter was charged. Without restating the facts detailed above, the evidence was sufficient for a jury to conclude beyond a reasonable doubt that Carter took the Expedition, which belonged to Kirk Auto, without authority or permission to do so. As such, this issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF MOTOR VEHICLE THEFT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED AND ONE YEAR TO SERVE AND FINE OF $1000.00 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.