ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Charles Billue was convicted of grand larceny on April 30, 2009, in the Circuit Court of DeSoto County. Billue was sentenced as a habitual offender to serve ten years in the custody of the Mississippi Department of Corrections. Aggrieved, Billue appeals, arguing that: (1) the trial court erred in failing to move African American members of the venire to the front during voir dire to ensure a sufficient number would be selected to ensure a fair trial, and (2) the jury’s verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Christie Hudgins and Billue were unmarried but living together in Tunica, Mississippi, in 2006. Billue worked relocating trucks and repossessing vehicles. Hudgins often assisted Billue by following him in a different car so she could pick him up after he completed a delivery. Hudgins testified that on December 25, 2006, Billue picked up Hudgins from her workplace at approximately 10:00 p.m. After having dinner, the two went to a Walgreens parking lot where Billue had indicated he was supposed to pick up a truck for delivery to Georgia. Hudgins described the truck as a white eighteen-wheeler with gray writing and the number 1217 written on it.
 

 ¶ 3. This description matched a FLD Freightliner truck owned by Charles Baker. Baker testified that he purchased the truck around December 19, or 20, 2006, for $19,000. Baker described the Freightliner as solid white with small pin striping and the number 1217 and Express America in
 
 *591
 
 red lettering on the side. Baker testified that on December 25, 2006, he parked the Freightliner in the parking lot behind the Walgreens in Horn Lake, Mississippi. The following morning he found that the truck was missing. The truck was never found.
 

 ¶4. Hudgins testified that when she drove to the- Walgreens parking lot with Billue so he could pick up the truck she suspected that something was wrong because picking up a vehicle in a Walgreens parking lot was unusual. Hudgins testified that she refused to help Billue. The couple returned home, and Billue eventually called someone else to take him to pick up the truck. Later, Hudgins talked to Billue via cell phone to help him stay awake as he drove to Georgia. The following evening, Billue rode a Greyhound bus back to Tunica from Georgia. When Hud-gins picked Billue up at the bus station, he had two black bags containing his clothes, CDs, truck radios, and XM satellite radios. Hudgins also testified that later that week law-enforcement officers interviewed her about Billue, and she told them about the truck at Walgreens.
 

 ¶ 5. Detective Josh Zacharias of the De-Soto County Sheriff’s Department testified at trial that he investigated the theft of the truck. Det. Zacharias interviewed both Hudgins and Billue, and he testified that Hudgins told him that there were items at the condominium she shared with Billue that she thought Billue had stolen from the truck. Hudgins consented to a search of their condominium. Hudgins rode with Det. Zacharias to the condominium in Tu-nica to conduct the search. Det. Zacharias testified that while searching the property he found a satellite radio that matched the description of Baker’s radio from the stolen Freightliner. Det. Zacharias later obtained a search warrant and seized a CB radio, two power inverter boxes, and fifty-one sets of truck keys from Billue’s pickup truck. The make and model of the CB radio and power inverter boxes matched those from Baker’s stolen Freightliner. Det. Zacharias also testified that Billue told him that he had driven his blue van to Atlanta, Georgia, and that it broke down so he left it and rode a Greyhound bus back. However, Det. Zacharias found the blue van parked at the condominium in Tunica.
 

 ¶ 6. Richard Sayles, a friend of Billue’s, testified at trial that he had known Billue and Hudgins for approximately three years. Sayles worked with Billue in repossessing trucks. Sayles testified that they often had master keys to trucks when repossessing them. Sayles corroborated Hudgins’s testimony concerning her role in following Billue and picking him up after Billue had delivered the trucks. According to Sayles, Billue spent most of Christmas day 2006 at Sayles’s house but left before 9:00 p.m. Sayles also corroborated Hudgins’s testimony regarding her working on the day the truck was stolen. Sayles also testified that he thought Hud-gins was untruthful. Shundrica Sayles, wife of Richard Sayles, testified that Hud-gins was untruthful, but she could not testify as to how many times she had contact with Hudgins during the two and one-half years she had known her. Billue chose not to testify.
 

 ¶ 7. After a one-day trial, which took place on April 30, 2009, a jury found Billue guilty of grand larceny. The trial court sentenced Billue as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007) to ten years in the custody of the Mississippi Department of Corrections, and the court ordered him to pay $1,000 in court costs, $19,700 to Baker’s insurance company, and $500 to Baker at the rate of $100 per month beginning
 
 *592
 
 sixty days following his release from incarceration.
 

 I. FAILURE TO SHUFFLE THE VENIREMEN
 

 ¶ 8. Billue asserts that the trial court erred in refusing to shuffle the members of the venire in order to move African American jurors up in the order of selection. Billue argues that he did not have an opportunity to select African American jurors. Billue contends that as a result, he was denied an impartial trial and due process of law.
 

 ¶ 9. Defendants have a right to a trial before a jury selected through nondiscriminatory means, but “the Sixth Amendment has never been held to require that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.”
 
 Simon v. State,
 
 688 So.2d 791, 806 (Miss.1997) (citing
 
 Britt v. State,
 
 520 So.2d 1377, 1379 (Miss.1988);
 
 Taylor v. Louisiana,
 
 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)).
 

 ¶ 10.
 
 Simon
 
 outlines the elements that establish a violation of the fair cross-section requirement for an impartial jury: (1) the group alleged to be excluded is a “distinctive” group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under representation is due to systematic exclusion of the group in the jury-selection process.
 
 Simon,
 
 688 So.2d at 806 (citing
 
 Lanier v. State,
 
 533 So.2d 473, 477 (Miss.1988)).
 

 ¶ 11. Prior to jury selection, defense counsel made a motion for the trial court to move some of the African American members of the venire from the back of the jury panel to the front to ensure a fair and impartial jury with an appropriate racial composition. Billue contends that his due-process rights were undermined by the lack of African Americans available for Billue to select during voir dire. This Court has previously noted that defendants are not entitled to a jury with any particular racial makeup.
 
 Shumpert v. State,
 
 983 So.2d 1074, 1078 (¶ 12) (Miss.Ct.App.2008). There is absolutely no indication of any systematic exclusion in the record. The record also reflects that the jury which was ultimately impaneled consisted of eleven Caucasians and one African American. There were two alternates, one Caucasian and one African American. Approximately fourteen percent of the pet-it jury and alternates were African American. The trial court noted that the venire was reflective of the demographic makeup of DeSoto County.
 
 [1]
 

 ¶ 12. Billue claims that it was determined that the African American alternate would have voted not guilty. Billue contends that this supports the view that the presence of a higher number of African Americans on the venire would have provided him with a fairer trial. There is no basis in the record to support this assertion. Even if there had been, the opinion of an alternate juror is not probative of the claim that the jury was improperly selected or that any distinctive group within the community was subject to systematic exclusion during jury selection.
 

 
 *593
 
 ¶ IB. During jury selection, control and direction of the jury is generally within the discretion of the trial judge.
 
 Hunter v. State,
 
 684 So.2d 625, 631 (Miss.1996) (citing
 
 Harris v. State,
 
 406 So.2d 823, 823 (Miss.1981)). Billue seems to claim the trial judge had an affirmative duty to “re-shuffle” the jurors when it appears that jurors exhibiting a common trait such as race, gender, or age are not evenly distributed among the jury venire. We know of no such duty and decline Billue’s invitation to establish one today. There exists no indication in the record that the jury venire was listed or seated by the trial court in any particular manner other than at random. In this case, the trial court acknowledged that it did have a concern with where the African American jurors were located within the first twenty-one jurors, but the court did it not find sufficient reason to shuffle the venire. The trial court further noted that it was open to entertaining a Batson
 
 [2]
 
 challenge if defense counsel opted to raise one. They did not.
 

 ¶ 14. After considering Billue’s arguments and reviewing the record, this Court finds no indication that the trial court erred by declining to move African American jurors toward the front of the panel to increase the likelihood that they would be selected for the petit jury. The number of African Americans who were selected for the petit jury or as alternates is indeed reflective of the number of African Americans in the community from which the jurors were drawn. No evidence was presented demonstrating a systematic exclusion of African American jurors during the selection or seating process. This issue is without merit.
 

 II. WEIGHT OF THE EVIDENCE
 

 ¶ 15. Billue asserts that the verdict is against the overwhelming weight of the evidence. Billue notes that there was never any confession or eyewitness account of the theft at issue in this case. The only evidence presented against Billue was the testimony of an alleged accomplice, Hudgins; and Billue notes that two defense witnesses testified that Hudgins was not credible.
 

 ¶ 16. In determining an issue of whether the weight of the evidence supports a verdict, an appellate court will only disturb a verdict if that verdict is so contrary to the overwhelming weight of the evidence that allowing the verdict to stand would sanction an unconscionable injustice.
 
 Ivy v. State,
 
 949 So.2d 748, 753 (¶ 21) (Miss.2007). Issues concerning the weight and credibility of evidence are to be determined by a jury,
 
 Harveston v. State,
 
 493 So.2d 365, 370 (Miss.1986), and this Court is not allowed to “pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.”
 
 Davis v. State,
 
 568 So.2d 277, 281 (Miss.1990).
 

 ¶ 17. Billue argues that the only evidence against him was testimony by Hud-gins. The record indicates otherwise. Uncontradicted evidence was offered at trial that tended to show that Baker owned a Freightliner truck, which was stolen in DeSoto County on Christmas Day 2006. The testimony of both Baker and Det. Zacharias indicated that a CB radio, an inverter power box, and a satellite radio that had been located in Baker’s stolen truck were found in Billue’s residence and vehicle.
 

 ¶ 18. Even if this evidence was not present in the record, this Court will not replace the judgment of the jury as to the credibility of witnesses with its own judg
 
 *594
 
 ment.
 
 Webster v. State,
 
 817 So.2d 515, 519 (¶ 16) (Miss.2002) (citing
 
 Gathright v. State,
 
 880 So.2d 1276, 1277 (Miss.1980)). As a result, any decision by the jury to assign more credibility to Hudgins’s testimony than to the testimonies from the defense witnesses, who alleged that Hud-gins was untruthful, is not a basis for reversal.
 

 ¶ 19. This was a circumstantial-evidence case, and the jury was instructed that in order to return a verdict of guilty, the State must prove BiUue’s guilt beyond a reasonable doubt and to the exclusion of any reasonable hypothesis consistent with innocence. Any conflicts in the evidence introduced at trial are for the jury to resolve. Allowing the verdict to stand does not constitute an unconscionable injustice. Accordingly, we find that the verdict is not against the overwhelming weight of the evidence. This issue is without merit.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.
 

 [1]
 

 . We note that the 2000 Federal Census indicates that approximately 11.39% of the residents of DeSoto County, Mississippi were African Americans. U.S. Census Bureau-Table 5: Counties with a Black Alone Population Greater Than Zero, Ranked by Number: 2000, http://www.census.gov/population.www.cen 200.briefs/phc-tl4/tables/tab05.pdf (last visited April 5, 2011).
 

 [2]
 

 .
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).