FAIR, J.,
for the Court:
¶ 1. Robert DeYarmett was charged with two counts of touching a child for lustful purposes. The victim was a five-year-old female, “Sandy,”[1] the granddaughter of DeYarmett’s longtime girlfriend. In addition to the victim’s statements, DeYarmett’s semen was found on the crotch of the girl’s pajamas. DeYar-mett was convicted on both counts, and he appeals, arguing that the evidence does not support guilty verdicts. We affirm.
FACTS
¶2. Sandy’s grandmother and DeYar-mett had been in a relationship for approximately sixteen years. They lived together in the grandmother’s mobile home. DeY-armett had an established, friendly relationship with Sandy; the day of the inci *712 dent, DeYarmett and the grandmother had attended Sandy and her older sister’s tee-ball games. The children then went- to spend the night at the grandmother’s home.
¶ 3. The grandmother testified that Sandy and her sister slept between her and DeYarmett, with Sandy and DeYar-mett sleeping next to each other. The grandmother woke up several times to find DeYarmett and Sandy still awake and watching television, but otherwise the grandmother saw nothing out of the ordinary. The final time she awoke, around 1:30 a.m., the grandmother found everyone asleep. The grandmother took Sandy and her sister home early the next morning. Sandy’s mother testified that Sandy went back to sleep after they got home, but when Sandy awoke she went into her mother’s bedroom and “wanted to snuggle.” Sandy “loved on” her mother, then buried her head and said, “Do you know what [DeYarmett] did to me? ... He licked my pee-pee.” Sandy’s mother testified that “pee-pee” was how Sandy referred to her genitals.
¶ 4. Later that day, Sandy was taken to the Hancock Medical Center, where she told a nurse DeYarmett had “licked her pee-pee and her butt” and that he “stuck ... his tail in her pee-pee.” The exam found no evidence of penetration, but semen was later discovered on the crotch of Sandy’s shorts. A DNA analysis matched the semen to DeYarmett.
¶ 5. DeYarmett’s theory of the case was that Sandy’s mother and grandmother were angry with him because DeYarmett had been planning to end his relationship with Sandy’s grandmother. He also attempted to establish that he was going to inherit a substantial amount of money and that he had been in a sexual relationship with the grandmother’s son’s wife.
DISCUSSION
¶ 6. Relevant to his arguments on appeal, DeYarmett’s indictment specifically alleged on Count I that he “did ... handle, touch[,] or rub with his tongue the vagina of [Sandy].” Count II alleged that DeYar-mett did the same with his penis. On appeal DeYarmett challenges the sufficiency of the evidence supporting Count II and the weight of the evidence on both counts.
1. Sufficiency of the Evidence— Count II
¶ 7. For sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). “[W]here the evidence fails to meet this test it is insufficient to support a conviction.” Id.
¶ 8. DeYarmett’s argument on appeal focuses on Sandy’s testimony at trial, which he describes as “labored” and reliant on “cues from the State.” With regard to Count II, Sandy testified (in part):
Q. [Sandy], did [DeYarmett] touch you with any other of his body parts?
A. Yes.
Q. Where on his body? What did he touch you with besides his hand and his tongue?
A. The front.
Q. The front of his body. What on the front of his body?
A. Down low.
[[Image here]]
Q. [Y]ou just said that [DeYarmett] touched you with his front on your *713 private. Did you just feel it and not see it or what happened?
A. Felt it.
Q. It what?
A. I felt it.
Q. You felt it. Okay. What did it feel like? You shrugged your shoulders, is that a I don’t know? Now you’re nodding your head yes. Okay. When you felt it, [Sandy], was it on top of your clothes or was it up underneath?
A. Underneath.
Q. Underneath. Was his skin touching your skin? Is that a yes or a no?
A. A yes.
Q. When he put his front private on you did he keep it still or did he move it around?
A. Kept it still.
¶ 9. Thus it is true that Sandy, six years of age at the time of trial, never clearly identified the body part DeYarmett touched her with as his penis. But she did testify that DeYarmett touched her with the “down low” part of his “front,” which was not his hand or his tongue, and which he was able to get under her clothes. Moreover, the nurse testified, in what was admitted as substantive evidence under a hearsay exception,[2] that Sandy told her DeYarmett had “stuck ... his tail in her pee-pee.”
¶ 10. In a challenge to the sufficiency of the evidence, “all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence.” Sowers v. State, 101 So.3d 1156, 1158 (¶ 12) (Miss.2012). Given the testimony we have discussed and the fact that DeYarmett’s semen was found in the crotch of Sandy’s shorts, we conclude a reasonable juror could find beyond a reasonable doubt that DeYarmett touched Sandy’s vagina with his penis, as specified in the indictment. This issue is without merit.
2. Weight of the Evidence — Both Counts
¶ 11. DeYarmett’s final issue challenges the weight of the evidence, which is distinct from the sufficiency argument addressed above. A challenge to the weight of the evidence will be successful only when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). The evidence must be viewed in the light most favorable to the verdict, and a new trial should be granted “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. The motion for a new trial is entrusted to the trial judge, who had a first-hand view of the trial. “[Reversal] is warranted only if the trial court abused its discretion.... ” Ivy v. State, 949 So.2d 748, 753 (¶ 21) (Miss.2007).
¶ 12. DeYarmett’s argument on this issue is largely based on what he alleges are inconsistencies in Sandy’s account as relayed to various people. DeYarmett notes that Sandy did not mention being touched with DeYarmett’s “tail” to her mother, yet she told the nurse she had. She also told the doctor DeYarmett had “showed” her the “tail,” yet at trial she testified she had never seen a man’s genitals and that she only felt DeYarmett touching her with his “lower front.” DeYarmett also notes that the doctor testified Sandy said DeYarmett forced her to undress, while at trial Sandy testified DeYarmett touched her under her clothes. Finally, DeYarmett contends the absence of penetration contradicted *714 Sandy’s statement that DeYarmett put his “tail into her pee-pee.”
¶ 13. DeYarmett also argues that the other circumstances surrounding the alleged molestation do not add up. He argues the grandmother would have noticed something amiss while sleeping in the same bed as DeYarmett and Sandy. And he contends that the presence of his semen on Sandy’s clothes does not prove he touched her, given that no semen was found on her body.
¶ 14. “Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.” Brown v. State, 995 So.2d 698, 702 (¶ 13) (Miss.2008) (citation and quotation omitted). Given the evidence we have already discussed, this issue is without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION OF COUNT COUNT I, TOUCHING OF A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF FIFTEEN YEARS; AND COUNT II, TOUCHING OF A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF FIFTEEN YEARS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF REPORTING PROBATION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE, AND TO PAY A $2,000 FINE AND $300 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. This Court uses pseudonyms to protect the confidentiality of minor victims of sexual abuse.

. See M.R.E. 803(4).