# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01776-SCT

*SAM HALES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/17/2015 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | CHRIS HENNIS |
| | STEPHANIE WOOD |
| | RANCE N. ULMER |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: BENJAMIN ALLEN SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | DANIEL CHRISTOPHER JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Sam Hales was convicted and sentenced to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for one count of sexual battery and fifteen years for one count of touching a child for lustful purposes, for a total of forty years, to be served day for day. Hales argues that the trial court erred in denying his motion for judgment notwithstanding the verdict (JNOV) because the jury's verdict was

against the overwhelming weight of the evidence. Finding no error, we affirm Hales's convictions and sentences.

**FACTS**

¶2.　J.P.[1], who was fourteen years old and in the eighth grade at the time of trial, lived with his mother, father, and four sisters. J.P. testified that Hales lived near him and that he was related to Hales, but J.P. was unsure of the nature of their relationship. J.P. testified that Hales "did something bad to me when I was little." J.P. believed the first occurrence of abuse was in February when he was in third grade. He recalled the incident happened around his sister's birthday. J.P. testified that he had gone to Hales's house to get a phone number for his mother. Hales told J.P. to wait in the living room. While J.P. was waiting, Hales came out of the kitchen with his pants unzipped, playing with his penis. J.P. testified that Hales "took me and slung me in the chair and grabbed, put his hand behind my head and told me to suck his penis." Hales pushed J.P.'s head down to his penis, and Hales's penis went inside J.P.'s mouth. Hales kept his hand on J.P.'s neck and let J.P. go only when J.P.'s mother called on the house phone.

¶3.　J.P. testified that the last time he was abused by Hales was 2013 when he was in fifth grade. J.P. believe the incident occurred around Halloween or Thanksgiving. J.P. testified that he was in Hales's bedroom and that Hales's mother, Delores, and brother, James House, also were at home at the time. Hales gave J.P. a "nasty book" with pictures of naked men and women to read. While J.P. was reading, Hales was "playing with himself, and he was trying

---

[1] Initials are used to protect the identity of the minor child.

to rub on me." J.P. testified that Hales was touching J.P.'s penis outside his clothes. After J.P. finished reading the book, Hales told J.P. to lean over and suck Hales's penis. J.P. stopped when Hales finally let go of his head.

¶4.     J.P. testified that Hales was circumcised and had a mole on the tip of his penis.  J.P. testified that he believed he was abused by Hales fifteen times. J.P. did not tell anyone about the abuse because he was worried about his mother, who recently had suffered a mini stroke, and he was afraid Hales would convince everyone that J.P. was lying. J.P. eventually told three of his cousins. J.P.'s oldest cousin told J.P.'s father what had happened, and J.P.'s father told J.P.'s mother. The first time J.P. talked to his mother, he told her that nothing had happened because Hales had told J.P. not to tell anyone. When his mother asked him again, he told her the truth, and his mother called the police. J.P. testified that he finally told the truth because he was tired of Hales abusing him. J.P. identified Hales as the person who had sexually assaulted and fondled him.

¶5.     J.P. acknowledged that he knew Hales had suffered a stroke in 2012 and had used a cane ever since. J.P. testified that he had been admitted to Pine Grove Behavioral Health and Addiction Services for approximately one week during the spring of 2012 for depression and anger problems.

¶6.     Thomas Roach, a corrections officer with the Jasper County Sheriff's Department, testified that, when Hales was strip-searched, Roach had noticed Hales was circumcised. Roach testified that he did not conduct a detailed inspection to determine if Hales had a mole

on the tip of his penis.[2] Chris Thompson, a criminal investigator with the Jasper County Sheriff's Department, testified that Hales's date of birth was April 15, 1959, and Hales's address was in District One of Jasper County.

¶7. The State rested and Hales moved for a directed verdict. The trial court overruled the motion, finding that there was "sufficient evidence for the case to go to the jury. The credibility of the victim is for the jury to determine."

¶8. Kathy House, Hales's sister-in-law, testified that she, her husband James, and her mother-in-law Delores all lived with Hales. House testified that Delores was bedridden and stayed in her bedroom but that Delores could see everything that happened on the couch in the living room. House testified that either she or Mary Jones, her sister-in-law, would be at the house at all times to take care of Delores. House also testified that she cleaned the house, including Hales's room, and never saw any "nasty" books. House stated that she noticed a change in Hales's mental state after his stroke and that he sometimes rambled and had difficulty answering questions. House testified that she had known J.P. for approximately seven years and that he seemed like a sweet child, but that he was known to lie.

¶9. On cross-examination, House denied that she ever left the house to run errands. She testified that if she were not at the house caring for Delores, her sister-in-law was there. House testified that she had a good relationship with Hales and did not want to see him go to prison. House testified that, while she agreed molesting a child was something one would do only in private, she never saw Hales molest J.P.

---

[2] Dr. A Keith Lay Jr. testified by stipulation that Hales did not have a mole on his penis.

4

¶10.    Jones testified that she also lived in the home with her brother, Hales. Jones testified that her mother, Delores, was bedridden and slept in a room that had been built onto the house. Delores would have been able hear everything that happened in the living room; however, her view to the living room was blocked by a wall. Jones testified that Hales's stroke had a "bad effect" on him. She testified that Hales "couldn't think like he used to and couldn't hardly use his left – well he couldn't use his left side for awhile." Jones testified that Hales's mental state had improved, but he still rambled when he was asked questions. Jones never left her mother alone because she was unable to care for herself. Jones also testified that when she cleaned the house, she never found any nasty books in Hales's room.

¶11.    On cross-examination, Jones testified that there were places that Hales could have hidden pornographic materials. Jones testified that she loved her brother and did not want him to go to prison.

¶12.    Hales ultimately was indicted on one count of sexual battery and one count of touching a child for lustful purposes. After a two-day trial, a Jasper County jury found Hales guilty of both counts. At a bifurcated hearing, Hales was sentenced to a term of twenty-five years for sexual battery and a term of fifteen years for touching a child for lustful purposes. The trial judge denied Hales's motion for JNOV, and Hales appealed.

## ANALYSIS

¶13.    Hales raises only one issue on appeal–whether the trial court erred in denying his motion for new trial because his verdict was against the overwhelming weight of the evidence.

5

¶14. "A motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial." *Ivy v. State*, 949 So. 2d 748, 753 (Miss. 2007). In *Bush v. State*, 895 So. 2d 836 (Miss. 2005), this Court set out the standard of review for weight of the evidence, stating:

> [w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State*, 691 So. 2d 948, 957 (Miss.1997). We have stated that on a motion for new trial:
>
> > the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). . . . [T]he evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957.

*Bush*, 895 So. 2d at 844.

¶15. Hales was charged with sexual battery under Mississippi Code Section 97-3-95(1)(d), which provides that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Hales also was charged with touching a child for lustful purposes under Mississippi Code Section 97-5-23, which provides that:

> [a]ny person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or

any member thereof, or with any object, any child under the age of sixteen (16) years, with or without the child's consent . . . shall be guilty of a felony.

Miss. Code Ann. § 97-5-23 (Supp. 2016).

¶16. Hales argues that he is entitled to a new trial because the State failed to produce any physical evidence that Hales inappropriately touched the minor victim or physically forced J.P. to perform oral sex. Hales also argues that J.P. "continually contradicted himself and was unbelievable." Hales claims the testimony of J.P. was insufficient to establish that Hales committed the crimes beyond a reasonable doubt.

¶17. We have held that the "victim's testimony regarding the occurrence of sexual battery, even in the absence of corroborating physical evidence, is legally sufficient to sustain a conviction for sexual battery." *Gazzier v. State*, 744 So. 2d 776, 779 (Miss. 1999). J.P. testified in detail regarding the first and last times that Hales had fondled and sexually assaulted him. Although Hales attempted to impeach J.P.'s testimony, J.P.'s testimony was not substantially contradicted. Any conflict in the testimony was resolved in the State's favor by the jury, which has the duty to weigh the credibility of witnesses and their testimony. *Clemons v. State*, 199 So. 3d 670, 674 (Miss. 2016). Reviewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence presented at trial sufficiently supported a finding that Hales sexually assaulted and fondled J.P. We find that this issue is without merit.

**CONCLUSION**

¶18. We find that Hales's assignment of error is without merit and affirm his sentences and convictions.

¶19.   **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY AND DAY-FOR-DAY, AND THESE SENTENCES SHALL NOT BE REDUCED OR SUSPENDED. THE APPELLANT SHALL NOT BE ELIGIBLE FOR PAROLE, PROBATION OR EARLY RELEASE.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**